Okay, Mr. Farquhar. Thank you, Your Honor, and may it please the Court. This case involves a rectangular, thermoformed article having a smooth periphery, such as the tray, that before 2016 was thought by others in the industry to be impossible to make. However, on August 31, 2015, a patent owner made, disclosed, and claimed the world's first roll-edge rectangular thermoformed article. And as the first to make such an article, the patent owner created the market for these products and garnered all the praise and commercial success that could be expected from an industry that was looking to obviate the need for environmentally unfriendly rectangular foam trays and a solution to remove the sharp edge that resulted from making rectangular thermoformed products. Counsel, is your primary argument that there are three key prior references that are not enabled? Is that what you're primarily in your head on? Your Honor, well, there's actually a fourth. The combination of two of those references is also enabled, yes, Your Honor. But people are not enabled. They are not enabled. And furthermore, the evidence that supports that also would militate towards finding non-obviousness and lack of anticipation as well. And so what happens here, and those three references, Your Honor, are the Meaders-Portelli and Long reference. So I think it does make sense to talk about the standard of review, which I think my colleagues seem to suggest almost outright bars this court from looking at any of these factual findings. But I would suggest in this court's decision in the McGuffin v. Social Security Administration, substantial evidence requires that one review the whole record, including that which detracts. In fact, it even says, quote, substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Now assuming for the moment that Mr. May, the petitioner's expert, had looked at textbooks and found that, well, something doesn't always result in a particular failure or that it may only likely, but not always, result in a defect, Your Honor's need look no further than evidence. In fact, a lot of this came from the petitioner themselves. Evidence that Dexter M.T., a third party which they believe practiced one of these references and that they say has a nexus, in fact, this party publicized that the method that it uses, the method which they say practices the Portelli method, was impossible to achieve the claimed embodiment prior to 2016, a year after the filing date. But it goes further. And this, unfortunately, was not considered in the final written decisions. But this Williams email from March of 2018, to me, is the closest evidence, because petitioner didn't put in any, to show that an embodiment of the claims, the patent owner, my client's three-peat trade, could not be made by this rolled rim in mold, RRIM process that they say. Did you erase the Williams email in your patent owner response or in the server file? In the server file, your honor. Was there something preventing you from raising it in your patent owner response? Your honor, we did not raise it in the patent owner response because we did not know that petitioner was going to be relying on Dexter M.T. to suggest that they could overcome our rebuttal of the presumption of enablement. And so in response to that statement, in fact, what happened in this case is that Mr. May testified that he relied on Mr. Williams to say that the Portelli method was enabled. Well, it happened that my client had reached out to Mr. Williams and Dexter M.T. to see if he, whether Dexter M.T. could help them make, as a secondary option, to make an embodiment of the claimed articles, and they couldn't. And in a way, since petitioner believes that the, proving that any embodiment didn't have to meet a particular claim limitation, all they have is evidence that after the filing date there are these articles, really, trays, that they say were somehow practicing the methods of these references, there's been no proof on the record at all that these articles even met the claim limitations. But we know from the Williams email that when asked, when Dexter M.T. was asked, make an embodiment of the claim, they said they couldn't do it without, quote, extensive series of tests and optimizations. He also referred to unknowns and determining whether what they think will happen will actually happen. This test, this type of documentary evidence, I think makes, it detracts from whatever substantial evidence petitioner claims the board had found. Had the board actually considered these things and were resolving the issue of undue experimentation, these documents show that skilled artisans did not have the ability, even as of 2018, to use this Portelli-like method, assuming that it was a Portelli-like method, to accomplish the claimed embodiments, which is key to it. This looks as though you're just arguing about whether the board's fact findings are correct. No, Your Honor. It's not just that. I think we are saying that substantial evidence review, which requires the consideration of that, which detracts from it, certainly there was no substantial evidence to support a finding that these references could make a claimed embodiment without undue experimentation. We are saying that, Your Honor. But even from a legal aspect, once patent owner had rebutted the presumption, which under MORSA required, again, a reasonable or non-frivolous argument that the references here, Portelli, Meders, and Wong, could not accomplish the claimed embodiment, then it was incumbent upon petitioner, the challenger, to come forward with evidence of enablement. And contrary to this case, this court's Raytheon decision, which Judge Chen authored, the issue was that here, the petitioner's expert did nothing like the petitioner did in the Raytheon case. There's no simulations. Despite all the textbook examples he gave, that all these problems that we identified could be resolved with, quote, routine skill, there's not one. All they rely on is saying, look, in 2016, 2017, there's these third parties that made these other articles. Well, two questions. One is- I don't think that's all they're relying on. Are they, Your Honor? I don't think that's all they're relying on. Well, no, they certainly rely on the fact that the issues we point out with the references don't show failure happens all the time, that there's a possibility that they could succeed, or that, in fact, what we offer as evidence to show non-enablement could be rebutted with only routine skill, that it could be fixed. But besides that, but putting aside the point that whether or not they say it could be fixed, the record is clear that whatever the skill in the art was, or may have been, the documentary evidence, which no one could really contradict, is that no one could achieve this result, the claimed result, using rolled rim and mold, and using whatever the Alto company was using, until after 2016, 2017. What about the Thorne textbook? The Thorne textbook talks about rim rolling, doesn't it? Your Honor, Thorne talks about rolling rims of cups, which it's in the patents, and that was the prior art. And it doesn't help them at all, it's just more of what was the problem that led up to the reason for the claim invention, and why its success was so vast. Because before... It's the basic evidence of taking, I don't know, some terminal edge and rolling it underneath, so that you don't have this sharp edge sticking out. Your Honor, for a circular article, that was possible because of the screw method that they used, which required a distant angle, it had to be a circular object, because as it would be screwed up, it would impact the edges against these walls and be rolled. That can't happen with a rectangular article. Did they also provide some real world examples, though, to counteract some of these arguments that you're making right now? And Your Honor, what they're calling real world examples, I have a lot of legal issues with them. Namely, they don't tie the method that made those articles to anything in these disclosures. And to the extent they do, these real world articles were not shown to be an embodiment of any of the particular claims at all. They just say, look, these articles exist. But as this Court has held in prior case law, the fact that it was made is not probable on the enablement, is not probative on the enablement issue. But Your Honor, I would also say that these articles all existed post filing date. They don't have a single article that existed prior to the filing date. I mean, again, I would go back to in the Raytheon case, there, at least, the expert tried to simulate the imagined nib engine. Here, Mr. May, despite having all these textbooks, cherry picked selections, we saw nothing to show that these references could actually, using those textbooks, could actually make an article. And as we know... I don't think that's required, though, by our law. You don't have to have a physical embodiment of the prior art. Your Honor, it is true that it is one of the wants factors, the existence of working examples, but even that wasn't shown. So the fact that maybe a physical article wasn't shown, or a working article did not exist prior to the filing date, they don't have any evidence that even what was in existence then could make something, according to those disclosures. And I'd say, Your Honor, too, you asked about the physical articles. With respect to the long reference, we don't even know what tooling or what methodology that reference even discloses, and the reason for that is because there are other fact-witnesses. Mr. Norton testified that that was kept as a secret by ALTO, the assignee. So you had... I spent a lot of time on your argument talking about enablement. Can you just sum up your argument with respect to anticipation? I feel like you're agreeing to many aspects, but then maybe the dispute is very limited. So can you return to that? So, Your Honor, on anticipation, there's two arguments for the two different references that are involved. The Meadors reference and Portelli. As to Meadors, there's nothing but speculation to support what this embodiment that they say could be made out of a thermoplastic. There's nothing to that effect. Well, the reference talks about thermoplastic material, doesn't it? The reference says that the blank, the starter material, can be thermoplastic, but there's nothing in that reference, no figure in that reference, and not even the reference itself, which says in the... It discloses the concept in terms of paper and paper forming. There's nothing in that reference that will show you a final form that is made out of a thermoplastic. And the only way one gets there is through speculation. So for... And that speculation can't suffice as substantial evidence, and more so the support... There's a lot of overlapping rejections here, or invalidity grounds. Is it correct that if we, hypothetically, affirm the Meadors 102, and affirm the 103 Portelli and Long, that would cover all the claims? No, Your Honor. Meadors 102, Portelli, Long 103. That would cover every single claim. That we wouldn't need to then address Portelli 102, Portelli alone 103. That's correct, Your Honor. I don't know. Any other ground that exists in this case. That is correct, Your Honor. If that was in the hypothetical, yes.  And then Your Honor asked about anticipation vis-a-vis Portelli. What we would say here is that to the extent that the Portelli anticipation theory was allowed to be let in, in the 916 and 918 IPRs, because it was excluded from the 919 as being an improper new argument, Portelli doesn't anticipate because it has defects within it, although they could be fixed by routine skill. A defective reference, as in Apple v. Corphonics, a defective reference cannot function as an anticipation. And moreover, Your Honor, the anticipation argument that they rely on Kenna Metal to suggest that you can once envisage these varied forms of the different embodiments in Portelli, I think it's akin to a picking and choosing argument. So that would be our best arguments, as I believe would be for the anticipation on Portelli, assuming Portelli is found enabled at all. And metals as well. I will jump, if I may, to the obviousness issue. And here, I think, again, the same evidence that we are showing to suggest a lack of enablement also shows a lack of a reasonable expectation of success with respect to modification of the Portelli reference or Portelli in view of Long. However, we did not argue lack of expectation of success for Portelli and Long, but for the same reasons that there was defects with respect to Portelli and the fact that Long calls out the Portelli reference and alludes to that it may often result in failures and that its double-stage thermoforming process was slow, we think these distinctions, these discrediting comments in the Long reference are more than sufficient to meet this course. So why wouldn't a combination of Long and Portelli solve that problem? Because, Your Honor, the principle of operation of the Long reference was to not do what Portelli proposed. It stated that the double-stage thermoforming process in the Australian counterpart for Portelli, which it's the Portelli reference, no dispute there, they said it was slow. They also said that it often results in puckers and distortions. These are teachings to a person of skill in the art to avoid failure. That's tantamount to a motivation not to combine. And the fact that... I don't think you answered my question. If in fact there was a problem with the Portelli reference, why doesn't combining it with Long solve the problem? Because the defects in Portelli are not solved by Long. Long, in other words, to solve Portelli's defects, at least what Petitioner is arguing, is that someone could fix up the particular methodologies that Portelli uses. Long doesn't use those methodologies. So there's nothing that Long teaches, assuming Long even teaches the methodology, that could solve any of the problems with Portelli. What is actually being borrowed from Long in the combination? Isn't it just the rim shape? The edge design? Your Honor, if you read these petitions, that's a very good question. They basically say Portelli meets all these claims, Long meets all these claims, therefore it's obvious to combine the two. I mean, I don't know, to me it seemed like a catch-all argument in the petition, but we addressed it. Your Honor, they do in their petition cite two different rim extensions from Portelli, from Long or Portelli, and they combine the two together. But again, that's akin to basically using the references as pieces of a jigsaw puzzle to kind of meet the claim. If you didn't have the claims as a road map, you have no idea to do that. And again, when we look at the Henry Hoeksema case. Isn't that like a substitution interchangeability theorem? Your Honor, I don't believe so, because that's assuming that what Long, when we look at the references in full, Long is, a person skilled in the art reading the Long reference would not find the desire to combine anything with Portelli because they're already concerned that it results in failures. You're not going to get that. In other words, the smooth periphery, which is what everyone wanted, Long is saying you can't get that with Portelli. So the person skilled in the art would not look to a failure mode to combine with Portelli. And again, like I said, Long does a completely different process. And under Hoeksema, the method of fabrication is part of the, you know, as a whole consideration under the Section 100. Whether a reference teaches a way or isn't compatible with another reference, that's a question of fact, right? Your Honor, it would be a question of fact, correct. And I think in this case, the evidence in the record, which I don't believe was really seriously handled by the USPTO, all they say is that we disagree. But the point is the principles of operation are clearly distinguishable. In fact, no one disagrees that Long was distinguishing Portelli at a minimum. Assuming they called a preference, Long distinguished Portelli, and therefore that distinguishing characteristic under Daiichi Sankyo precedent, that's a distinguishing characteristic that would militate against a motivation to combine. And we've argued that. Okay, I think we're out of time. We'll give you two minutes for rebuttal. Thank you, Your Honor. Thank you. Okay, Mr. Fisher. Thank you, Your Honor, and may it please the Court. The standard of review on appeal is substantial evidence. That standard is met if a reasonable fact finder could, not necessarily would, but could have reached the same conclusion when looking at the record as a whole. It does not mean what CM asks this Court to do, which is to go through the parties' competing evidence and reweigh all of it. CM has, in fact, failed to raise a fair enough point to any issue on which there is actually a lack of substantial evidence. Instead, they're trying to retry the merits of nearly every issue in the case. According to CM, the PTAB's weighing of the evidence was wrong with respect to every finding of enablement of the prior art, every finding of anticipation, and every finding of obviousness, including the weight that the Board gave to CM's alleged evidence of objective indicia of non-obviousness. In addition, all the claims in this case are directed to a plastic tray. They're not directed to the method of making the tray. Yet the bulk of CM's arguments are focused on the manufacturing method. For example, if you look at page 10 of the blue brief, CM talks about the speed of its manufacturing process and criticizes the, quote, slowness of the double-stage thermoforming process as disposed of Portelli. I think we heard counsel also talk about how slow the thermoforming process of Portelli would have been. But that's all beside the point, because the speed of commercial production is not an element of any claim in this case. Now, as we know, enablement was a key issue in the case, and CM argued that the methods of Portelli and Long would be incapable of producing the trays disclosed in those references. For example, CM contended that a posita would not have been able to form a rolled rim on a non-circular argument, a non-circular article. Technoplex countered with substantial rebuttal evidence, and I believe the Throne textbook was raised by Your Honor. And I would ask the Court to refer to Appendix 15111 and 15112, which contains a particularly pertinent passage of the Throne reference. Throne states, quote, the classic example of rim treatment of thin-gauge parts is the rolled rim. Throne goes on to say that although the method is a standard method for round parts, quote, rim rolling is used on occasion for oval, elliptical, or oblong parts with generous corner radii. An oblong part with corners is a rectangle, not a circle. So Throne by no means was limiting its discussion to circular articles or round objects. In fact, CM's own expert admitted that thermoforming is an extremely mature art. It's been around for over 70 years, and that was a finding that was adopted by the Board. In addition to that, we provided photographs of examples of products made by the millions on a commercial scale using the same methods described in Portelli and Long that CM claimed couldn't possibly work. Not just that, we provided catalogs of off-the-shelf equipment with which Pazito would have been well familiar and could have used to implement the processes described in Portelli and Long. And our expert, Mr. Glenn May, tied all that evidence together with his declaration. Ultimately, the PTAB found Technoplex's evidence more persuasive than CM's evidence. So the issue here is not a lack of substantial evidence. It's that CM doesn't like and is dissatisfied with how the Board weighed the evidence. Do you agree with my characterization of the question that I asked opposing counsel that the primary argument they seem to be making is a lack of enablement on the three key prior art references? And I would divide it as the three that we were talking about with opposing counsel. Yes, that is their primary argument, Your Honor. And then in terms of the anticipation argument, do you agree that they really are focused on matters not being anticipatory, in their opinion, because it doesn't disclose an article formed from a thermoplastic sheet? Yes, Your Honor, that is their key argument. And no other? They're not disputing any other aspects in terms of matters of disclosure? Is that accurate on the anticipation part? I believe that is true, Your Honor. CM did raise one legal issue, which is the construction of the phrase, quote, either of VSP and MAP, or MAP, sealing technologies, which appears in Claim 1 of the 624 patent. CM's argument there boils down to the assertion that either means both, which is just incorrect, and they have no authority for that argument. Does the Court have any questions about the issues that I've raised thus far? I would like to make one point about the Williams email that counsel mentioned, and it's the fact that Williams himself was ambivalent, and if you actually look at the second page of that email, you can see where he says that the process is not actually impossible, and this appears at Appendix 22119, where Williams states, quote, we also know from past tests that this does not mean that it is impossible, but it means that we need to do more testing to find this out. This also means that it is not suited to go into a fixed time schedule where you want to have your production up and running in six months. So Williams, again, didn't believe that this particular specific tray edge was impossible. He was just saying, well, you want it production ready. It's not impossible. We can do it. But, again, the speed and ability to commercially produce these trays is not an element of any claim in this case. Anything further? No, that's all I have, Your Honor. Thank you. Thank you. Mr. Farquhar, you have a couple minutes. Thank you, Your Honor. I want to start by saying that under the standard review, and as this Court also held in McGuffin, that the agency's fact-finding cannot be immunized because you dub something a credibility determination, especially when there's documents in the record that contradict the witness's story. So Mr. May's testimony notwithstanding, there's plenty of documents in the record that were never really even handled by the Board in finding substantial evidence that detracts, if not show that his story is not credible. But, Your Honors, I will say that let's look at the obviousness issue, since, as Judge Channon pointed out before, is important. The Portelli and Long combination is applicable to all the claims. Your Honors, the testimony on which the Board found there to be substantial evidence It's not applicable to all the claims, right? Well, except for Claim 8 of the 6AL patent. But, otherwise, all other challenge claims were found to be unpalatable over the Portelli and Long combination. The obviousness findings of the PTAB and by USPTO were based on Mr. May's testimony, which excluded consideration of the objective indicia of non-obviousness. Under the in-touch text case, that testimony should be of courted no weight on review because it's conclusory. It admits the... I don't think the Board was relying on or an ultimate conclusion about obviousness, but rather the prima facie case. But, Your Honor, the point is when... But those opinions that they cite to for Mr. May are on giving the opinion that, in combination, these references render the claims obvious. It's an ultimate conclusion. Never consider the objective indicia. And, again... But I don't think the Board was relying on him for the ultimate conclusion. Your Honor, so if the opinion that he gives on the... Well, his opinions were that they were obvious. He concluded they were. Nevertheless, he never considered the objective indicia. And with respect to the objective indicia, I just want to add that, in this instance, the USPTO never properly analyzed the objective indicia, which were not really disputed under proper legal lenses, coming up with many different reasons why they should not be afforded any weight or, in some cases, were insufficient. It's just not really clear to us. But you agree, right, that the PTAB did consider the secondary considerations or objective indicia. You just don't agree with the weight that was given to them. No, Your Honor. I don't think they truly considered them because when they... First, they said that the absence of... They said there was an absence of industry, the long-felt need. When we... That was in our brief we cited to Section 2B of the Patent Owner Response. They came out and said that there was no long-felt need. And then, furthermore, they said that there wasn't... When they analyzed each of the objective indicia, they just called into question, was the commercial success exponential enough? Were the industry praise sufficient? But when that... But in your view, it sounds like you only would agree that the Board considered something if the Board agrees with your take. No, that's not true, Your Honor. I would not mind if the Board came out and gave a reason why was the industry award in three emails that we received with industry praise insufficient. You just don't know from the record. You don't know why was the evidence of copying not sufficient when we proved under the Medtronic jurisprudence that the petitioner had access and the products were substantially similar. They... Okay, I think we're out of time. Thank you. Thank you, Your Honor.